RICHARD F. TATE ET AL. *v.* BOARD OF LEVEE COMMISSIONERS FOR THE YAZOO-MISSISSIPPI DELTA.

PRIVILEGE TAXES. *Cotton seed oil mills. Laws* 1898, *ch.* 5, *p.* 14. *Repeal. Laws* 1894, *ch.* 78, *p.* 77.

Laws 1898, ch. 5, p. 14, relieving cotton-seed oil mills having a capital of less than thirty thousand dollars from a privilege tax, relates only to such tax for state purposes, and does not include the tax for levee purposes, imposed by Laws 1894, ch. 78, p. 77.

FROM the circuit court of Tunica county.

HON. SAMUEL C. COOK, Judge.

The board of levee commissioners, appellee, was plaintiff, and Tate and another, appellants, were defendants in the court below. From a judgment in plaintiff's favor defendants appealed to the supreme court.

The suit was brought to recover the sum of $200, being double the amount of privilege license tax claimed by plaintiff for two years, from January 1, 1901, to January 1, 1903. The case was tried in the circuit court on an agreed statement of facts before the judge, a jury having been waived. The facts as agreed on are, substantially, as follows: Defendants (appellants) operated and ran a cotton seed oil mill in Tunica county, Miss., which is within the district of said levee board, from January 1, 1897, up to the time the suit was brought, and up to the 1st of January, 1903; that the machinery and buildings of the said oil mill represented a capital of a little less than $30,000; and the privilege taxes sued for were not paid.

*F. A. Montgomery,* for appellant.

Sec. 2, ch. 78, Laws 1894, levies a privilege tax, for levee purposes, on each cotton seed oil mill, where the buildings and machinery represent a capital of not more than $30,000—to wit, $50.

The laws of 1894, page 23, levy a state privilege tax of $100 on each oil mill where the buildings and machinery represent a capital of not more than $30,000.

On same where the capital exceeds $30,000, but not over $50,000 and less than $75,000, $175, etc.

In 1898 the privilege tax law was revised by chapter 5 of the laws of that year, and on page 14 of those acts a tax is levied on cotton seed oil mills where the capital exceeds $30,000, but none where the capital does not exceed that amount, thereby repealing clearly the law of 1894, which levied a state privilege tax on oil mills where the capital did not exceed $30,000, and the question in this case is, Does the act of 1898, chapter 5, repeal the privilege for levee purposes on oil mills where the capital does not exceed $30,000?

Sec. 107 of ch. 5, laws of 1898, was intended to apply to the levee board, and to repeal the levee privilege tax where the privilege was not taxed by the state. That section is as follows:

"Sec. 107. Restriction on Taxation of Privileges: The privilege tax as above provided shall not be taxed by the board of supervisors of any county; nor shall they be subject to taxation, by any municipality, to an amount exceeding fifty per centum of the tax specified, unless expressly provided by law," etc.

Sec. 109 of the same law provides:

"That all acts in conflict with this act shall be, and they are hereby, repealed," etc.

*J. L. Lowe,* for appellee.

There is a broad distinction between municipalities and levee districts, recognized in sec. 104 of the state constitution, which

emphatically denominates the two to be in different and separate classes, wherein the said fundamental lawmakers declared that, "In civil causes the statute of limitation should not run against the state, or any subdivision, or municipal corporation, thereof."

It is apparent from the language used that a municipal corporation is as different from a subdivision of the state as said corporation is from the state, so far as the classification thereof is concerned. In the case of *Adams* v. *Illinois C. R. R. Co.*, 71 Miss., 752, the court stated that the Yazoo-Mississippi Delta Levee District was a subdivision of the state, and the court was then construing this very sec. 104 of the state constitution, and to make said sec. 107, acts 1898, apply in this case, or any similar act restrictive of the privilege taxing power, the said restrictive act would have to specifically name the Yazoo-Mississippi Delta Levee Board.

But, on the other hand, we insist that the levee board, by the act of 1894, page 77, was not only delegated the power to collect privilege taxes, as sued for in this case, from parties who operated oil mills of this class, but that the tax itself was levied by the legislature by the act.

CALHOON, J., delivered the opinion of the court.

On February 28, 1884 (Laws 1884, p. 140, ch. 168), the appellee was incorporated and authorized to issue bonds. The only scheme provided by the act of incorporation to pay the bonds is in sec. 13 of it, by which the legislature itself, for the board, "hereby levied and assessed" a tax of thirteen mills on the dollar of all property, real and personal, in the front, and nine mills on the dollar in the back, counties. This tax was, of course, independent of the current and ordinary taxation for state and county purposes, and not subject to its annual fluctuations. On March 16, 1886 (Laws 1886, p. 100, ch. 39), the act of incorporation was amended, by which amendment, in sec. 3 (page 102) of the act, the scheme of revenue for the

board to pay the bonds was broadened, and a tax on privileges was "hereby levied and assessed" on a great variety of things named, but cotton seed oil mills were not included among the subjects of privilege taxation. In the legislation of the years 1884 and 1886, when both these acts were passed, separate laws provided for privilege taxes for general purposes distinct from those for levee purposes. We now come to Code 1892, ch. 108, § 3412, which is the same as § 587, Code 1880, and which expressly restricts the powers of boards of surpervisors or municipalities to tax the privileges in the chapter of which it is a part, and which is for state purposes, more than 50 per cent of the state tax on privileges. It is to be noted that the chapter includes cotton seed oil mills, and puts a privilege tax on them, where their capital does not exceed $30,000, of $100, and is silent as to any tax on oil mills for levee purposes. Coming now to the acts of 1894, we find chapter 29, page 21, passed February 10th of that year, which is for state purposes, taxing, on page 23, cotton seed oil mills with a capital not exceeding $30,000, the sum of $100. But we also find chapter 78, page 77, of the same session, passed February 9th of that year, repealing sec. 3 of the beforementioned act of 1886, and substituting for it an enlarged list of privilege taxes for the levee board, and on page 81 fixing a tax for it on cotton seed oil mills of $50 where the capital does not exceed $30,000. These acts are clearly independent each of the other. The acts of 1898 do not deal at all with the taxes for the board of levee commissioners, but present chapter 5, which on page 14 taxes cotton seed oil mills only where the capital exceeds $30,000, and leaves those of less value untaxed, but this chapter is for state purposes; and sec. 107 (page 33) of it expressly restricts county and municipal boards from exceeding 50 per cent of the taxation imposed by that chapter. Appellants' case depends on their contention that, since the act of 1898 does not tax oil mills of not exceeding $30,000 value, in which class

theirs is, it practically repealed the levee tax of 1894. We do not concur in this view. The two things are separate and independent, and the levee tax stands unrepealed.

*Affirmed.*